FILED

2018 Feb-08  PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ALAN SCHNEIDER**, Individually and as Administrator of the Estate of MARY SCHNEIDER, Deceased,   )<br>)<br>)<br>)<br>Plaintiff,   )<br>)<br>vs.   )<br>)<br>**TEVA PHARMACEUTICALS USA, INC.**; **ACTAVIS PHARMA, INC.**, and **TEVA PHARMACEUTICAL INDUSTRIES LIMITED**, jointly and severally,   )<br>)<br>)<br>)<br>)<br>Defendants.   )<br>_____/ | CIVIL ACTION NUMBER:<br><br>_____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW the plaintiff in the above-styled cause, by and through his undersigned attorneys, and for his complaint against the defendants herein named says, alleges, and avers as follows:

### Nature of this Action

1.      This is an action, under and pursuant to Ala. Code § 6-5-410, for damages for the wrongful death of plaintiff's decedent Mary Schneider on March 9, 2012.  Plaintiff Alan Schneider, the administrator and personal representative of said decedent's estate, and said decedent's surviving spouse, alleges that defects in

1

certain Watson fentanyl transdermal system ("FTS") patches, which were formulated, developed, designed, manufactured, assembled, distributed, marketed, and sold by certain of the Material Non-Party Entities as hereafter described, and as to which the defendants, or any one or combination thereof, are, for purposes of this action, the successors-in-interest and/or have contractually assumed liability for the culpable conduct or negligence that proximately caused or contributed to cause the death of plaintiff's decedent Mary Schneider.

2.    Plaintiff's claims are brought under and pursuant to the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), the Alabama Products Liability Act, Ala. Code § 6-5-500, *et seq.*, the law of implied warranty of merchantability and fitness for a particular purpose, and the common-law of negligence, wantonness, and recklessness.

3.    Furthermore, plaintiff Alan Schneider, as the surviving spouse of Mary Schneider, brings claims for damages individually against the defendants for loss of consortium, society, and companionship of his wife, plaintiff's decedent Mary Schneider, due to the alleged wrongful and culpable acts proximately resulting in her wrongful death.

## Jurisdiction and Venue

4.    Plaintiff Alan Schneider is an adult resident of Shelby County, Alabama, in this judicial district.

2

5.     Each defendant is a corporation or other business entity organized and existing under the laws of a state or jurisdiction other than Alabama, and each said defendant has its principal place of business in a state other than Alabama.

6.     The amount in controversy, exclusive of interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

7.     Venue in this district is proper under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims herein asserted occurred in this district.  Plaintiff's decedent died in this district.

8.     Venue also is proper in this district pursuant to and under that certain Tolling Agreement entered into by parties on February 10, 2016.

9.     Furthermore, pursuant to and under the said Tolling Agreement, defendants have agreed that this action and the claims brought herein filed on February 8, 2018, are timely and that defendants will not raise the statute of limitations as a defense to the claims herein made.

## Material Non-Party Entities

10.     The defective FTS patches at issue in this action were designed, manufactured, marketed, and distributed by certain Material Non-Party Entities (hereafter "MNPE") prior to death of plaintiff's decedent Mary Schneider. The named defendants are, for purposes of this action, the successors-in-interest and/or have contractually assumed liability for the wrongful, culpable, or negligent

conduct of the MNPE that proximately caused or contributed to cause the death of plaintiff's decedent Mary Schneider.

11.   The MNPE are identified as follows:

(a).   Actavis, Inc., is or, at the times relevant to this complaint, was a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in New Jersey.  Prior to January 23, 2013, Actavis was known as Watson Pharmaceuticals, Inc.  Actavis was the parent corporation of MNPE Watson Pharma, Inc., and Watson Laboratories, Inc. (Nevada), and Watson Laboratories, Inc. (Delaware).

(b).   Watson Pharmaceuticals, Inc., is or, at the times relevant to this complaint, was a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in, plaintiff believes and avers, California.  Watson Pharmaceuticals, Inc., was the parent corporation of MNPE Watson Pharma, Inc., and Watson Laboratories, Inc. (Nevada), and Watson Laboratories, Inc. (Delaware).

(c).   Watson Pharma, Inc., is or, at the times relevant to this complaint, was a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New Jersey.  Watson Pharma was a subsidiary of MNPE Watson Pharmaceuticals, Inc., and/or Actavis, Inc. Watson

Pharma is or, at the times relevant to this complaint, was registered and is or was then actively engaged in business in the State of Alabama.

(d).    Watson Laboratories, Inc. (Nevada) ("Watson Nevada"), is or, at the times relevant to this complaint, was a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in, plaintiff believes and avers, New Jersey.  Watson Nevada was a subsidiary of MNPE Actavis.

(e).    Watson Laboratories, Inc. (Delaware) ("Watson Delaware"), is or, at the times relevant to this complaint was a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in, plaintiff believes and avers, Utah. Watson Delaware was a subsidiary of Actavis.

(f).    Allergan plc ("Allergan") is foreign business entity organized and existing under the laws of Ireland, with its principal place of business in Ireland.  Depository shares of Allergan are actively traded on the New York Stock Exchange.  Prior to the acquisition of the "Actavis Generics" business by Teva Pharmaceutical Industries Limited by Master Purchase Agreement dated July 26, 2015, Allergan acquired some or all of the MNPE and other Actavis entities involved in the development, design, manufacture, marketing, distribution, and sale of the FTS patches here at issue.  Allergan is engaged in business in the United

States and this judicial district by and through its wholly-owned subsidiary private corporation, Allergan USA, Inc.

12.     In 2017 or thereabouts, defendants Teva Pharmaceutical Industries Limited, Teva Pharmaceuticals USA, Inc., and Actavis Pharma, Inc., or any one or any combination thereof, finalized the 2015 acquisition of the "Actavis Generics" component of the MNPE. Pursuant to that acquisition, defendants, or any one or any combination thereof, became the successors-in-interest to the MNPE and contractually or otherwise assumed liability for the death of plaintiff's decedent resulting from the Watson FTS patches here at issue.

13.     Therefore, for purposes of this action, as successors-in-interest and by the terms of the said acquisition, defendants, or any one or combination thereof, became and are liable for all damages to which the plaintiff in this action is entitled resulting from the culpable or negligent conduct of any one or more of the MNPE that caused or contributed to cause the death of Mary Schneider.

## Parties

14.     Plaintiff Alan Schneider is an adult resident of Shelby County, Alabama, in this judicial district.  Plaintiff brings this action individually and, under and pursuant to Ala. Code § 6-5-410(a), as the lawfully appointed administrator and personal representative of the estate of his spouse, Mary Schneider, deceased.

6

15.     Defendant Teva Pharmaceuticals USA, Inc. (hereafter "Teva USA") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the Commonwealth of Pennsylvania. According to the most recent SEC Form 20-F (for the calendar year ending December 31, 2016) filed by defendant Teva Pharmaceutical Industries Limited (the foreign parent entity), defendant Teva Pharmaceuticals USA, Inc., is the principal wholly-owned operating subsidiary in the United States of the foreign parent entity.  Teva USA is registered and is actively engaged in business in the State of Alabama and this judicial district.

16.     Defendant Actavis Pharma, Inc. (hereafter "Actavis Pharma") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New Jersey. According to the most recent SEC Form 20-F (for the calendar year ending December 31, 2016) filed by defendant Teva Pharmaceutical Industries Limited (the foreign parent entity), defendant Actavis Pharma, is a wholly-owned operating subsidiary in the United States of the foreign parent entity. Actavis Pharma is registered and is actively engaged in business in the State of Alabama and this judicial district.

17.     Defendant Teva Pharmaceutical Industries Limited (hereafter "TevaPharm") is a foreign business entity organized and existing under the laws of Israel, with its principal place of business in Israel.  Depository shares of

TevaPharm are actively traded on the New York Stock Exchange.  TevaPharm is the sole parent entity of both its wholly-owned subsidiary private corporation defendants Teva USA and Actavis Pharma. Defendant TevaPharm is engaged in business in the United States and this judicial district by and through its wholly-owned subsidiaries private corporations, defendants Teva USA and Actavis Pharma.

## The Watson Fentanyl Transdermal System

18.    Each of the MNPE, predecessors to the named defendants for purposes of this action, controlled and/or participated in the formulation, development, design, manufacture, assembly, distribution, marketing, and/or selling of the fentanyl transdermal system ("FTS") marketed under the Watson brand at issue in this action (sometimes referred to herein as the "Watson FTS" or the "product").

19.    Fentanyl is a powerful Schedule II controlled synthetic narcotic (opioid) drug, which has a rapid and highly potent onset and short duration of action, that is between 80 and 200 times stronger than morphine.  Fentanyl is indicated and used for the relief of severe pain.  Fentanyl was first synthesized in 1960, and was initially used as a general anesthetic under the trade name Sublimaze in the 1960s.  In the mid-1990s, fentanyl was widely used for the palliative treatment of unmanageable severe pain in end-stage cancer patients.

Thereafter, fentanyl was accepted by clinicians and, as of 2012, it was the most widely used synthetic opioid in clinical practice.

20.     The Watson FTS is a multi-layer drug dosing patch that was formulated, developed, designed, manufactured, assembled, distributed, marketed, sold, and intended by the MNPE to be applied to the patient's skin for continuous release to fentanyl to the patient over a period of 72 hours.  The said Watson FTS patch here at issue consists of five (5) principal components, viz:  (1) a single-unit, non-compartmentalized reservoir containing a quantity of the Schedule II controlled narcotic drug fentanyl in gel form, the amount of which varies depending on the dosage level of the particular patch, (2) an adhesive layer for adhesion of the patch to the patient's skin, (3) a release membrane between the adhesive layer and the fentanyl reservoir intended to regulate the release of fentanyl to the patient's skin, and thus into the patient's body fats and, in turn, bloodstream; (4) a protective layer overlying the adhesive layer that is removed immediately prior to application to the patient's skin, and (5) a backing layer covering the fentanyl reservoir on the outside (non-contact side) of the patch.

21.     The MNPE formulated, developed, designed, manufactured, assembled, distributed, marketed, and sold several fentanyl dosage strengths of the Watson FTS patches.  The reservoir of the particular Watson FTS patch at issue in this case contained five milligrams (5 mg) of fentanyl, and was formulated,

developed, designed, manufactured, distributed, marketed, sold, intended and supposed by the MNPE to deliver 50 micrograms (mcg) of fentanyl to the patient per hour over the course of approximately three (3) days, and is referred to as a "50 mcg/hr" patch.

22.     The Watson FTS patch is intended by the MNPE to be used for the particular purpose of delivering a measured quantity of fentanyl to the bloodstream of patients requiring around-the-clock narcotic treatment of severe pain.

23.     The MNPE supposed that, as developed, formulated, designed, manufactured, assembled, distributed, marketed, and sold by them, the Watson FTS patches will release a certain amount of fentanyl into the patient at a certain rate (e.g., 50 mcg/hr), and thus produce a certain level of fentanyl in the patient's blood for relief of severe pain.  In other words, if the Watson FTS functions properly, the patient should not receive a harmful or toxic dose of fentanyl.

24.     However, a substantial risk of serious injury or death even from proper use of the aforesaid Watson FTS patch exists, and said risk was known to the MNPE when they formulated, developed, designed, manufactured, assembled, marketed, distributed, and sold the said Watson FTS patch, in that the  patch can leak, rupture, or otherwise fail and cause or allow a dangerous, toxic, or fatal amount of fentanyl gel to be immediately released into the patient's body.

10

25.     Indeed, on August 8, 2008, the MNPE issued through the federal Food and Drug Administration (FDA) a recall of several thousand 75 mcg/hr Watson FTS patches because a defect in the said patches resulted in said patches "leaking fentanyl gel" or otherwise failing, thus "potentially exposing patients or caregivers directly to fentanyl gel."  Furthermore, the said recall notice stated that "exposure to fentanyl gel may lead to serious adverse events, including respiratory depression and possible overdose, which may be fatal."

26.     The design of the Watson FTS patch at issue in this action is not the only design for fentanyl transdermal system patches. At the time the instant Watson FTS patches were formulated, developed, designed, manufactured, assembled, distributed, marketed, and sold, there existed, and the MNPE knew there existed, an FTS "matrix" design with fentanyl stored in segregated compartments in the patch that was and is utilized by other manufacturers.

27.     Said matrix design is such that, in the event of a puncture, perforation, or other failure of the fentanyl-containing pouch, an excessive, harmful, toxic or fatal amount of fentanyl will not be released into the patient's body, thus rendering the "matrix" FTS patch a safer, practical, alternative design that was available to the MNPE.

## Facts

28.     On March 1, 2012, plaintiff's decedent Mary Schneider, who was then

59-years-old, consulted and was examined by Dr. J.W. Pitts, Jr., at the ACIPCO

Medical Group (AMG) clinic in Birmingham, Jefferson County, Alabama, for

chronic back pain from which she had suffered since injuring her lower back and

undergoing back surgery in 2001 or 2002.

29.     Dr. Pitts noted that Mrs. Schneider had received epidural pain blocks

that did not provide her with relief from the pain. Mrs. Schneider asked Dr. Pitts to

refer her to another pain specialist.

30.     Dr. Pitts further noted that Mrs. Schneider had previously been

prescribed and taken gabapentin (Neurontin) and morphine sulfate for her pain.

31.     As a result of his examination, Dr. Pitts found Mrs. Schneider to be in

reasonably good overall health with no life-threatening injuries, diseases, or other

conditions, and no conditions that would contraindicate her use of a fentanyl patch.

Dr. Pitts planned to refer Mrs. Schneider to Dr. Jack David Denver, a physical

medicine and rehabilitation specialist in Birmingham.

32.     Dr. Pitts prescribed for Mrs. Schneider gabapentin 300 mg to be taken

three (3) times a day, and "Duragesic patch 50 mcg # 10 apply every 72 hours."

On both these drug prescriptions, Dr. Pitts signed "product selection permitted."

33.   On that same day, March 1, 2012, Mrs. Schneider had her said prescriptions filled at the ACIPCO Medical Group Pharmacy, which along with filling the said gabapentin prescription, dispensed to Mrs. Schneider ten (10) Watson FTS 50 mcg patches, in two (2) boxes containing five (5) patches each, lot number 453658A, and with an expiration date of September 2013.

34.   Mrs. Schneider used the said Watson FTS patches as prescribed and according to the Medication Guide created by the MNPE (provided to her by said pharmacy) from March 1, 2012, until March 9, 2012, never abused or misused the said Watson FTS patches, and did not use them contrary to the prescribed method. Mrs. Schneider did not alter, modify, change, or damage any of the said Watson FTS patches.

35.   At some time during the day of March 9, 2012, Mrs. Schneider died at her home in Pelham, Shelby County, Alabama.  At the time of her death, Mrs. Schneider had one (1) of the subject Watson FTS 50 mcg/hr patches properly affixed to the right lateral flank of her abdomen (a proper placement position for said patch according to the said Medication Guide).

36.   Her husband, plaintiff Alan Schneider, discovered Mrs. Schneider's lifeless body when he returned home after work on that date, and called the Pelham emergency response unit.  Emergency medical technicians from the Pelham Fire

Department and officers from the Pelham Police Department responded to Mr. Schneider's call.

37.    Mrs. Schneider's body was removed from the Schneiders' residence and transported to the Shelby County Coroner, and from there to the Alabama Department of Forensic Sciences ("ADFS") for autopsy.

38.    Toxicological analysis of blood (serum) specimens obtained at the ADFS autopsy of Mrs. Schneider's body on March 12, 2012, revealed that her blood (serum) fentanyl level at that time was in the "toxic range."

## Claims for Relief

## COUNT ONE

## DESIGN DEFECT

39.    Plaintiff realleges each and every allegation and paragraph of this Complaint and incorporates same by reference into this Count One as if here set out in full.

40.    At all times relevant to this complaint, the MNPE, or any one or combination thereof, jointly, collectively, and/or severally were engaged in the business of formulating, developing, and designing the Watson FTS patch described above, and placed same in the stream of commerce by supplying and/or selling same pharmacies throughout the United States and particularly in the State of Alabama.

14

41.     Defendants, or any one or combination thereof, are the successors-in-interest to or are otherwise responsible for the conduct of the MNPE that were engaged in the business of formulating, developing, and designing the Watson FTS patch described above, and placed same in the stream of commerce by supplying and/or selling same pharmacies throughout the United States and particularly in the State of Alabama.

42.     The MNPE engaged in that business and, any one or combination thereof, jointly, collectively, and/or severally, controlled and/or participated in the formulation, development, and design of the Watson FTS patch dispensed to plaintiff's decedent on March 1, 2012, as alleged hereinabove.

43.     At the time said Watson FTS patches were dispensed to and used by plaintiff's decedent Mary Schneider as alleged, said Watson FTS patches were in substantially the same condition as when they left the control of the MNPE, and had not been altered, modified, changed, or damaged after leaving their control.

44.     Plaintiff's decedent Mary Schneider used said Watson FTS patches in the manner intended and directed by the MNPE, and her use thereof in such a manner was foreseeable, intended, and expected by said MNPE.

45.     The Watson FTS patches dispensed to plaintiff's decedent Mary Schneider on March 1, 2012, as alleged, were defectively formulated, developed, and designed, were unreasonably dangerous when used as intended, directed, and

expected by the MNPE, did not meet the reasonable expectations of an ordinary consumer thereof with respect to safety, in that the said Watson FTS patches were known, since at least 2008, to leak, rupture, or otherwise fail and cause or permit excessive and dangerous amounts of extremely potent, powerful, and dangerous fentanyl gel to be released immediately and delivered to the patient wearing said patch, thus resulting in an overdose causing serious injury or death to the patient. Prior to the time of manufacture and distribution of the patch that caused decedent Mary Schneider's death, the MNPE knew or should have known that numerous patients using the said Watson FTS patches had received lethal doses of fentanyl while using said patches as prescribed through internal studies, wrongful death lawsuits filed against them, the FDA's adverse events reporting system, reports of medical examiners, and other sources.

46.    Said design defect proximately caused or contributed to cause the wrongful death of plaintiff's decedent Mary Schneider on March 9, 2012, as alleged.

47.    At the time the said defectively designed Watson FTS patches were formulated, developed, and designed by the MNPE, there existed and was available to the MNPE a safer, practical, alternative "matrix" design for said patches, as described above, but, for reasons unknown, the MNPE did not utilize the said safer, practical, alternative "matrix" design instead of the Watson FTS

16

patches that were dispensed to and used by plaintiff's decedent Mary Schneider as heretofore alleged.

48.    Utilization of the said safer, alternative, practical "matrix" design by the MNPE probably would have eliminated the design defect herein alleged, so that the death of plaintiff's decedent Mary Schneider probably would not have occurred as it did and as previously alleged.

## COUNT TWO

### MANUFACTURING DEFECT

49.    Plaintiff realleges each and every allegation and paragraph of this Complaint and incorporates same by reference into this Count Two as if here set out in full.

50.    At all times relevant to this complaint, the MNPE, or any one or combination thereof, jointly, collectively, and/or severally, were engaged in the business of manufacturing and assembling the Watson FTS patches described above, and placed same in the stream of commerce by supplying and/or selling same to pharmacies throughout the United States and particularly in the State of Alabama.

51.    Defendants, or any one or any combination thereof, are the successors-in-interest to or are otherwise responsible for the conduct of the MNPE that were engaged in the business of manufacturing and assembling the Watson

FTS patches described above, and placed same in the stream of commerce by supplying and/or selling same to pharmacies throughout the United States and particularly in the State of Alabama.

52.    The MNPE engaged in that said business, when they jointly, collectively, and/or severally, controlled and/or participated in the manufacture and assembly of the Watson FTS patches dispensed to plaintiff's decedent on March 1, 2012, as alleged hereinabove.

53.    At the time said Watson FTS patches were dispensed to and used by plaintiff's decedent Mary Schneider as alleged, said Watson FTS patches were in substantially the same condition as when they left the control of the MNPE, and had not been altered, modified, changed, or damaged after leaving their control.

54.    Plaintiff's decedent Mary Schneider used said Watson FTS patches in the manner intended and directed by the MNPE, and her use thereof in such a manner was foreseeable, intended, and expected by said MNPE.

55.    The Watson FTS patches dispensed to plaintiff's decedent Mary Schneider on March 1, 2012, as alleged, were defectively manufactured and assembled, were unreasonably dangerous when used as intended, directed, and expected by the MNPE, did not meet the reasonable expectations of an ordinary consumer thereof with respect to safety in that one or more components of the said Watson FTS patches had been nicked, cut, damaged, or otherwise altered or

18

changed from the design thereof, to such an extent and degree that said patches caused or permitted excessive and dangerous amounts of extremely potent, powerful, and dangerous fentanyl gel to be delivered to the patient wearing said patch, thus resulting in an overdose causing serious injury or death to the patient.

56.    Said manufacturing or assembly defect proximately caused or contributed to cause the wrongful death of plaintiff's decedent Mary Schneider on March 9, 2012, as alleged.

## COUNT THREE

## DISTRIBUTION, MARKETING, AND SALE

57.    Plaintiff realleges each and every allegation and paragraph of this Complaint and incorporates same by reference into this Count Three as if here set out in full.

58.    The MNPE, or any one or combination thereof, jointly, collectively, and/or severally, controlled and/or participated in the distribution, marketing, and selling of the Watson FTS patches dispensed to plaintiff's decedent Mary Schneider on March 1, 2012, and had knowledge of, and/or participated in the formulation, development, design, manufacture, and/or assembly of the said Watson FTS patches.

59.    Defendants, or any one or any combination thereof, are the successors-in-interest to or are otherwise responsible for the conduct of the MNPE

that controlled and/or participated in the distribution, marketing, and selling of the Watson FTS patches dispensed to plaintiff's decedent Mary Schneider on March 1, 2012, and had knowledge of, and/or participated in the formulation, development, design, manufacture, and/or assembly of the said Watson FTS patches.

60.     Said Watson FTS patches were defective and unreasonably dangerous to the ultimate consumer (patient) by reason of the formulation, development, design, manufacture, and/or assembly defects heretofore alleged.

61.     The MNPE were also the manufacturer or assembler of the said Watson FTS patches, and/or exercised substantial control over the design, testing, manufacture, packaging, or labeling thereof, and/or altered or modified the said Watson FTS patches.

62.     Said defects in the Watson FTS patches that were distributed, marketed and/or sold by the MNPE proximately caused or contributed to cause the wrongful death of plaintiff's decedent Mary Schneider on March 9, 2012, as alleged.

## COUNT FOUR

## FAILURE TO ADEQUATELY WARN

63.     Plaintiff realleges each and every allegation and paragraph of this Complaint and incorporates same by reference into this Count Four as if here set out in full.

64.     The MNPE, or any one or combination thereof, jointly, collectively, and/or severally, directed the marketing and advertising for the said Watson FTS patches directly to patients, physicians, and pharmacies.

65.     Defendants, or any one or any combination thereof, are the successors-in-interest to or are otherwise responsible for the conduct of the MNPE that directed the marketing and advertising for the said Watson FTS patches directly to patients, physicians, and pharmacies.

66.     The MNPE knew or should have known that the said Watson FTS patches were unreasonably dangerous when used in the intended and ordinary manner.

67.     Said MNPE had a duty to adequately warn patients, physicians, and pharmacies of the unreasonably dangerous design and/or condition of the Watson FTS patches at issue in this action.

68.     Said MNPE breached the duty and failed to adequately warn plaintiff's decedent Mary Schneider and/or her physician and/or the pharmacy dispensing said product of the unreasonably dangerous design and/or condition of the Watson FTS patches at issue in this action, and/or failed to inform plaintiff's decedent Mary Schneider and/or her physician and/or the pharmacy of the availability of a product with a safer, alternative, and practical "matrix" design described above.

69.     Said MNPE further negligently failed to inform plaintiff's decedent Mary Schneider and/or her physician and/or the pharmacy as to the advantages, decreased risk, enhanced safety, and benefits of the "matrix" fentanyl gel patch, as opposed to the Watson FTS "reservoir" patch.

70.     Said MNPE' failure to adequately warn plaintiff's decedent Mary Schneider and/or her physician and/or the pharmacy dispensing said product of the unreasonably dangerous design and/or condition of the Watson FTS patches at issue in this action, and/or said MNPE' failure to inform plaintiff's decedent Mary Schneider and/or her physician and/or the pharmacy of the availability of a product with a safer, alternative, and practical "matrix" design, proximately caused or contributed to cause the wrongful death of plaintiff's decedent Mary Schneider on March 9, 2012, as alleged.

## COUNT FIVE

### NEGLIGENCE, WANTONNESS, AND RECKLESSNESS

71.     Plaintiff realleges each and every allegation and paragraph of this Complaint and incorporates same by reference into this Count Five as if here set out in full.

72.     The MNPE, or any one or combination thereof, had a duty to exercise ordinary and/or reasonable care in the formulation, development, design, assembly, manufacturing, marketing, distribution, and sale of the product at issue in this

22

action, viz:  the Watson FTS patches described above, including, but not limited to,

a duty to assure that the said patches did not cause or contribute to cause, while

being properly and appropriately used by a patient, the death of the patient from an

overdose of fentanyl.

73.     Defendants, or any one or any combination thereof, are the

successors-in-interest to or are otherwise responsible for the conduct of the MNPE

that had a duty to exercise ordinary and/or reasonable care in the formulation,

development, design, assembly, manufacturing, marketing, distribution, and sale of

the product at issue in this action, viz:  the Watson FTS patches described above,

including, but not limited to, a duty to assure that the said patches did not cause or

contribute to cause, while being properly and appropriately used by a patient, the

death of the patient from an  overdose of fentanyl.

74.     The MNPE, or any one or combination thereof, jointly and severally,

negligently and/or wantonly and with a reckless disregard of the consequences of

its wrongful and culpable acts or omissions breached that duty in the formulation,

development, design, assembly, manufacturing, marketing, sale, and distribution of

the said Watson FTS patches because said patches created, and the MNPE knew or

reasonably should have known that the said patches created, a high risk that the

death of the patient from an accidental overdose of fentanyl would occur when the

patches were used properly and appropriately by a patient as alleged hereinabove.

75.     The negligence and/or wantonness and/or recklessness of the MNPE, or any one or combination thereof, combined and concurred to proximately cause or contribute to cause the death of plaintiff's decedent Mary Schneider.

## COUNT SIX

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

76.     Plaintiff realleges each and every allegation and paragraph of this Complaint and incorporates same by reference into this Count Six as if here set out in full.

77.     The MNPE, or any one or combination thereof, were merchants or sellers with respect to the product at issue in this action, viz:  the Watson FTS patches described above, and distributed, marketed, and/or sold the product at issue in this action.

78.     Defendants, , or any one or combination thereof, are the successors-in-interest to or are otherwise responsible for the conduct of the MNPE that were merchants or sellers with respect to the product at issue in this action, viz:  the Watson FTS  patches described above, and distributed, marketed, and/or sold the product at issue in this action.

79.     The said Watson FTS patches were impliedly warranted by the MNPE to be merchantable, free of defects in formulation, development, design,

24

manufacture, assembly, distribution, marketing, and sale, and reasonably safe for use as directed or intended by the MNPE.

80.     The said product was used by the plaintiff's decedent Mary Schneider for the ordinary purpose for which such products are used, and as intended, expected, or supposed by the MNPE.

81.     The said product at issue in this action was defective, or unmerchantable in that same was not fit for the ordinary purposes for which such products are used as alleged hereinabove.

82.     The said defects in the product and breach of said implied warranty of merchantability proximately caused or contributed to cause the wrongful death of plaintiff's decedent Mary Schneider as alleged hereinabove.

## COUNT SEVEN

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

83.     Plaintiff realleges each and every allegation and paragraph of this Complaint and incorporates same by reference into this Count Seven as if here set out in full.

84.     The said Watson FTS patches were impliedly warranted by the MNPE to be fit for the particular purposes for which they were formulated, developed, designed, manufactured, assembled, distributed, marketed, and sold by the defendants,  and to further be free of defects in formulation, development, design,

25

manufacture, and assembly, and reasonably safe for use as directed or intended by defendants.

85.   Defendants, or any one or any combination thereof, are successors-in-interest to or are otherwise responsible for the conduct of the MNPE that impliedly warranted that the said Watson FTS patches were fit for the particular purposes for which they were formulated, developed, designed, manufactured, assembled, distributed, marketed, and sold by the MNPE, and that they were free of defects in formulation, development, design, manufacture, and assembly, and reasonably safe for use as directed or intended by the MNPE.

86.   The MNPE, or any one or combination thereof, knew or had reason to know of the particular purpose to which plaintiff's decedent Mary Schneider would reasonably and foreseeably use the said Watson FTS patches.

87.   The MNPE, or any one or combination thereof, had reason to know that plaintiff's decedent Mary Schneider and/or her physician and/or the dispensing pharmacy were relying on the defendants' skill and judgment to furnish an appropriate, safe, and effective product for that purpose.

88.   Plaintiff's decedent Mary Schneider and/or her physician and/or the dispensing pharmacy, in fact, relied upon the skill or judgment of the MNPE.

26

89.     The said product at issue in this action and properly used by plaintiff's decedent Mary Schneider was defective and not fit for the particular purpose for which it was sold  as alleged hereinabove.

90.     The said defects in the product and breach of said implied warranty of fitness for a particular purpose proximately caused or contributed to cause the wrongful death of plaintiff's decedent Mary Schneider as alleged hereinabove.

## COUNT EIGHT

## LOSS OF CONSORTIUM AND SOCIETY

91.     Plaintiff realleges each and every allegation and paragraph of this Complaint and incorporates same by reference into this Count Eight as if here set out in full.

92.     As a proximate result and consequence of the wrongful, culpable, or negligent conduct, actions, and omissions of the MNPE as alleged hereinabove, plaintiff Alan Schneider was caused to be permanently deprived of the society, consortium, and companionship of his wife, plaintiff's decedent Mary Schneider, and was caused and will be caused in the future to suffer emotional distress and mental anguish as a result of the wrongful death of his wife, plaintiff's decedent Mary Schneider.

93.     Defendants, or any one or combination thereof, are the successors-in-interest to or are otherwise responsible for the wrongful, culpable, or negligent conduct, actions, and omissions of the MNPE as alleged hereinabove.

## Prayer for Relief

WHEREFORE, plaintiff Alan Schneider demands judgment against defendants Teva Pharmaceuticals USA, Inc., Actavis Pharma, Inc., and Teva Pharmaceutical Industries Limited, jointly and severally, as follows:

(a).     In an amount of damages determined by the jury sufficient to punish the defendants for the enormity of the wrong committed in causing the wrongful death of plaintiff's decedent Mary Schneider, and that will deter the defendants and others from committing similar wrongful and culpable acts in the future;

(b).     Plaintiff Alan Schneider, individually, demands judgment against said defendants, jointly and severally, in an amount of damages sufficient to adequately compensate him for the wrongful loss of the consortium, society and companionship of his wife, Mary Schneider; and

(c).     For an award of all costs, litigation expenses, pre-judgment interest, post-judgment interest, and other amounts to which he is entitled.

## Jury Demand

Plaintiff demands trial by jury of all issues in this cause properly triable thereby.

28

/s/ Michael Allsup_____
Michael Allsup (ASB-3951-L42M)
One of the Plaintiff's Attorneys
(michael.allsup@jacobymeyers.com)

Jacoby & Meyers, LLC
1929 Third Avenue North
Suite 800, The Farley Building
Birmingham, Alabama 35203
Telephone (205) 380-7070, 244-1115
Facsimile (205) 244-1171

/s/  Joseph J. Siegelman_____
Joseph J. Siegelman (ASB-6058-B92D)
One of the Plaintiff's Attorneys
jsiegelman@cochranfirm.com

The Cochran Firm Birmingham, P.C.
222 20th Street North, Suite 800
Birmingham, Alabama 35203
Telephone (205) 244-1115
Facsimile (205) 244-1171

<u>Notice of Lawsuit and Request to Waive Service of Summons (AO 398) and</u>
<u>Waiver of the Service of Summons (AO 399) to be mailed to all defendants at the</u>
<u>following addresses:</u>

Jeffrey F. Peck
Ulmer & Berne, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409

Teva Pharmaceuticals USA, Inc.
c/o Corporate Creations Network, Inc., Registered Agent
6 Office Park Circle # 100
Mountain Brook, Alabama 35223

Actavis Pharma, Inc.
c/o Corporate Creations Network, Inc., Registered Agent
6 Office Park Circle # 100
Mountain Brook, Alabama 35223

Teva Pharmaceutical Industries Limited
Post Office Box 3190
Petach Tikva 4951033, Israel